# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Kenath Richard Stein,

        Plaintiff,

v.

Chase Home Finance, LLC and
National City Bank,

        Defendants.

Civ. No. 09-1995 (MJD/JJG)


REPORT AND RECOMMENDATION

---

JEANNE J. GRAHAM, United States Magistrate Judge

    This matter is before the Court on Defendant Chase Home Finance, LLC's Motion for Summary Judgment (Doc. No. 84) and Plaintiff Kenath Stein's Motion for Summary Judgment (Doc. No. 108). Kenath Stein ("Stein") is representing himself pro se. Aleava Rael Sayre and Calvin P. Hoffman appeared for Defendant Chase Home Finance, LLC ("Chase"). Ben I. Rust appeared for Defendant National City Bank ("National").

    The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota, referred the motions to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) in orders of reference dated April 30, 2010 and June 24, 2010. For the reasons set forth below, the Court recommends that Chase's Motion for Summary Judgment be granted and Stein's Motion for Summary Judgment be denied.

## I.    STEIN'S CLAIMS AGAINST CHASE

### A.    Facts

    On October 18, 2006, Stein executed a mortgage in favor of Chase Bank USA, N.A. in the amount of $484,000 to secure payment of a promissory note. (Reardon Aff. ¶¶ 4, 5 & Exs. A,

B, Apr. 16, 2010, Doc. No. 81.) Stein signed the note and mortgage in blue ink. (Slipka Aff. ¶ 6-1,[1] Apr. 14, 2010, Doc. No. 71.) Closing agent Jennifer Motz verified Stein's identity from his drivers license and completed an Affidavit Regarding Proof of Identity. (Reardon Aff. Ex. E.) Stein also signed a Name Affidavit. (Reardon Aff. Ex. F.)

The terms of the note and mortgage required Stein to make monthly payments until the note was paid in full. (Reardon Aff. ¶ 8 & Ex. B.) Failure to make a payment would result in a default, in which case Chase Bank USA, N.A. could accelerate the debt and foreclose the mortgage. (Reardon Aff. ¶¶ 8, 9 & Exs. A, B.) Stein acknowledged receiving notice of his right to cancel the transaction within three days. (Stein Aff. Ex. CH00306, June 25, 2010, Doc. No. 114.) The note and mortgage were freely assignable or otherwise transferable without prior notice to Stein. (Stein Aff. Ex. CHCD113, June 25, 2010, Doc. No. 113.)

Effective December 1, 2006, JPMorgan Chase Bank, N.A. ("JPMorgan") began servicing Stein's loan. (Stein Aff. Ex. CH00516, Doc. No. 114.) Stein was notified of the change, advised of JPMorgan's phone number and address, and advised of his rights under RESPA. (Stein Aff. Exs. CH00516-17, Doc. No. 114.)

Stein failed to make his February 2008 payment of $4087.12, which was due on March 1, 2008, and several subsequent payments. (Stein Aff. Exs. CH00486, CH00581, CH00583, July 7, 2010, Doc. No. 127.) Although Stein paid some amount toward the past due balance on March 10, 2008, $4279.30 remained past due. (Stein Aff. Ex. CH00589, Doc. No. 127; Reardon Suppl. Aff. Ex. E at CH00540, July 2, 2010, Doc. No. 120.) An automatically-generated, 32-day delinquency letter was sent to Stein on April 2, 2008. (Reardon Suppl. Aff. Ex. E & CH00539.) Stein informed Chase Bank USA, N.A. on April 25, 2008 that it had misapplied his March

---

[1]    This affidavit contains two paragraphs numbered 6, the first of which the Court has designated 6-1.

payment to another of his loan accounts. (Reardon Suppl. Aff. Ex. E at CH00540.) However, because Stein was delinquent on his other account too, Chase Bank USA, N.A. transferred only part of the payment and told Stein he would need to pay the balance to bring his loan current. (Reardon Suppl. Aff. Ex. E at CH00540.)

Stein did not pay the balance or make his next payment, and a second 32-day delinquency letter was issued. (Reardon Suppl. Aff. Ex. E at CH00541.) Stein's May 2008 statement reflected $12,453.54 as the amount needed to bring his account up to date. (Stein Aff. Ex. CH00592, Doc. No. 127.) By August 28, 2008, Stein owed $29,379.17 to bring his account current.

On September 17, 2008, Chase's attorney Michael Oberle sent a letter to Stein advising him that his loan was in default and that Chase would be commencing foreclosure proceedings. (Rust Aff. Ex. B, July 2, 2010, Doc. No. 119.) Oberle explained that Stein had thirty days to dispute the debt or it would be assumed valid. (*Id.*) A "Preforeclosure Notice" was also enclosed. (*Id.*)

On September 25, 2008, Chase Bank USA, N.A. assigned its rights and interests in the mortgage to Chase. (Reardon Aff. ¶ 7 & Ex. C.) The assignment was recorded at the Hennepin County Recorder's Office on October 3, 2008. (Reardon Aff. ¶ 7 & Ex. C.) Chase commenced foreclosure proceedings on November 12, 2008. (Reardon Aff. ¶¶ 10, 11 & Ex. D; Stein Aff. Ex. CHCD3-3, Doc. No. 127.)

Notice of the foreclosure sale was published in the publication *Finance and Commerce* on December 2, 2008, and six times thereafter. (Hoffman Aff. Ex. A.) At the Sheriff's sale on January 21, 2009, Chase was the highest bidder and purchased the property for $524,558.22. (*Id.*) Chase obtained a Sheriff's Certificate of Sale executed by Richard W. Stanek, Hennepin

County Sheriff. (Stein Aff. Ex. CHCD4-12, Doc. No. 127.) Stein did not redeem the property within six months. (Reardon Aff. ¶ 12.)

During the redemption period, Stein sent two letters to Chase. On March 4, 2009, Stein sent a letter to Tonya Manuel, Foreclosure Analyst, Chase Home Finance, LLC, 3415 Vision Drive, Columbus, OH 43219-6009. (Am. Info. Sheet Ex. B at 1, Doc. No. 5.) In that letter, Stein "offered" to accept Chase's "claim" on the condition that Chase produce the original note, Chase's corporate registration documents, Chase's bank charter, and proof of harm incurred from Stein's default. (*Id.*) Stein accused Chase of violating the Racketeer Influenced and Corrupt Organizations Act, and threatened that failure to respond to the letter within ten days would result in "dishonor and in notarial [sic] protest course of action and judgment taken against you." (Am. Info. Sheet Ex. B at 3, Doc. No. 5.) On March 24, Stein sent a letter to Brian H. Liebo, Chase Home Finance LLC, 4500 Park Glen Road, Suite 300, Minneapolis, MN 55416. (Am. Info. Sheet Ex. C at 1, Doc. No. 5.) The letter was captioned "Second Offer Letter" and made similar offers and demands. Chase did not respond to the letters.

Stein filed a complaint against Chase and National in Hennepin County District Court on June 30, 2009. He mailed a copy of the summons and complaint to Chase and National, but his attempted service by mail was ineffective. By the time Chase and National removed the case to federal court on July 30, 2009, Stein still had not perfected service of process. Stein ultimately served Chase on March 26, 2010 and National on April 26, 2010.

Chase's attorneys met Stein at the Hennepin County Government Center on April 7, 2010, and showed him what they asserted to be the original promissory note and mortgage signed in blue ink. (Wegscheid Aff. ¶¶ 2, 3, 8, 14, 16, Apr. 23, 2010, Doc. No. 83.) However,

Stein's associate David Slipka, who also attended that meeting, averred that Chase did not produce the original note or mortgage. (Slipka Aff. ¶ 7-2,[2] Apr. 14, 2010.)

On July 25 or 26, 2010, Chase's original note and mortgage were stolen. (Sayre Suppl. Aff. ¶¶ 5, 6, 7, July 30, 2010, Doc. No. 155.)

## B.    Stein's Rule 56(f) Affidavit

Stein filed an affidavit pursuant to Federal Rule of Civil Procedure 56(f) in opposition to Chase's motion for summary judgment. (Stein Aff., July 7, 2010, Doc. No. 127.) Rule 56(f) permits a party to oppose a motion for summary judgment by submitting an affidavit, showing "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(f). As his showing, Stein identified several documents he received from Chase on July 2, 2010, after the close of discovery. However, while those documents may have been produced late, Stein now has the documents, and has even submitted them in opposition to Chase's summary judgment motion. Stein has not identified any undisclosed documents or information essential to opposing Chase's motion. Having reviewed all of the evidence submitted by the parties, the Court is convinced that there are no additional facts that would be essential to Stein's opposition. Furthermore, discovery closed on June 1, 2010, and there is no outstanding discovery to be exchanged. Consequently, the Court declines to deny or continue Chase's motion for summary judgment, based on Stein's Rule 56(f) affidavit.[3]

---

[2]    This affidavit contains two paragraphs numbered 7, the second of which the Court has designated 7-2.

[3]    It is also worth noting that Stein filed his own motion for summary judgment, which is inconsistent with his position that summary judgment is premature.

## C.    Standard of Review

Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Chial v. Sprint/United Mgmt. Co.*, 569 F.3d 850, 853-54 (8th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)). The moving party bears the burden to show that the material facts are not in dispute. *Mems v. City of St. Paul*, 224 F.3d 735, 738 (8th Cir. 2000). The nonmoving party may not respond with mere allegations or denials but must present specific facts creating an authentic issue for trial. *Anderson*, 477 U.S. at 256. The evidence and resulting inferences are viewed in the light most favorable to the nonmoving party. *Graves v. Ark. Dep't of Fin. & Admin.*, 229 F.3d 721, 723 (8th Cir. 2000).

## D.    Discussion

In 2009, a foreclosure defense colloquially termed "show me the note" began circulating through courts across the country. *E.g.*, *Sundell-Bahrd v. Tiffany & Bosco, P.A.*, No. CV 10-8096-PCT-MHM, 2010 WL 2595083, at *1 (D. Ariz. June 24, 2010); *Wallis v. IndyMac Fed. Bank*, --- F. Supp. 2d ---, 2010 WL 2342530, at *5 (W.D. Wash. June 8, 2010); *Zambrano v. HSBC Bank USA, Inc.*, Civ. No. 01:09-cv-996, 2010 WL 2105164, at *6 (E.D. Va. May 25, 2010); *Mansour v. Cal-Western Reconveyance Corp.* 618 F. Supp. 2d 1178, 1181 (D. Ariz. 2009). Advocates of this theory believe "that only the holder of an original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." *Sundell-Bahrd*, 2010 WL 2595083, at *1. Courts have routinely rejected the defense on the ground that foreclosure statutes

simply do not require production of the original note at any point during the proceedings. *See, e.g., Mansour*, 618 F. Supp. 2d at 1181.

All of Stein's claims against Chase are based in part on his belief that Chase was required to produce the original note and mortgage before or during the foreclosure proceedings. Based on this belief, Stein alleges the following claims: (1) that the foreclosure proceedings were invalid because Chase did not present the original note on demand, (2) that Chase is not a holder in due course under Minn. Stat. § 336.3-302, (3) that Chase breached a contract to produce the original note, (4) that Chase violated the Truth in Lending Act, (5) that Chase violated the Real Estate Settlement Procedures Act, (6) that Chase committed civil theft under Minn. Stat. § 604.14, and (7) that Chase committed fraud.

### 1.  Holder in Due Course

Stein argues that Chase must not have held the note in due course, given its refusal to produce the original promissory note at the foreclosure sale or during the redemption period.

A holder of an instrument is a "holder in due course" when

(1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

(2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in section 336.3-306, and (vi) without notice that any party has a defense or claim in recoupment described in section 336.3-305(a).

Minn. Stat. § 336.3-302(a). A holder gives "value" for an instrument when money is actually paid. *See Menard, Inc. v. King De Son, Co., Ltd.*, 467 N.W.2d 34, 37 (Minn. Ct. App. 1991). "An instrument is transferred when it is delivered by a person other than its issuer for the

purpose of giving to the person receiving delivery the right to enforce the instrument." Minn. Stat. § 336.3-203(a). "Transfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course" *Id.* § 336.3-203(b).

Here, Chase Bank USA, N.A. was the original holder in due course. The note was received for value because Chase Bank USA, N.A. loaned Stein $484,000 in exchange for the note. Chase provided a copy of the note in support of its motion for summary judgment. There is no evidence of forgery, alteration, irregularity, bad faith, or any other deficiency listed in Minn. Stat. § 336.3-302(a). To the extent Stein disputes the authenticity of his signature on the note or the mortgage, his claim fails because he did not specifically deny the authenticity of his signature in his complaint, as required by Minn. Stat. § 336.3-308(a). But even if Stein had complied with § 336.3-308(a), the record is uncontroverted that he signed the note and mortgage. Both Stein and Slipka have personally averred to that fact. Moreover, when Stein signed the note and mortgage, closing agent Jennifer Motz prepared an Affidavit Regarding Proof of Identity, after verifying Stein's name and drivers license number. Stein also signed a Name Affidavit. There can be no dispute that Stein's signatures are authentic.

Chase became the holder in due course of the note and mortgage pursuant to an assignment from Chase Bank USA, N.A. The terms of the note and mortgage permitted the instruments to be assigned, and the assignment vested in Chase all rights held by Chase Bank USA, N.A. to enforce the terms of the instruments. *See* Minn. Stat. § 336.3-203(b); *NAB Asset Venture II v. Lenertz, Inc.*, No. C4-97-2181, 1998 WL 422207, at *3 (Minn. Ct. App. July 28, 1998). Although Stein has questioned the validity of the assignment, he has presented no evidence that the assignment was invalid.

Chase is entitled to summary judgment on Stein's claim that Chase was not a holder in due course.

## 2.    Validity of the Foreclosure Proceedings

Stein next alleges that the foreclosure proceedings were not valid because Chase did not produce the original promissory note at the foreclosure sale or during the redemption period. However, Stein has not identified one statutory requirement that was violated in foreclosing his mortgage, and there is no requirement that the original note or mortgage be produced at the foreclosure sale. Indeed, a sheriff's certificate of sale is prima facie evidence that a foreclosure is valid, *see* Minn. Stat. § 580.19, and Chase has presented the Sheriff's Certificate of Sale it obtained when it purchased the property. Stein has failed to rebut the presumption of validity, and the Court finds the foreclosure was valid.

Minnesota Statute § 580.23 provides the sole method by which a mortgagor may redeem a property after foreclosure. The mortgagor must pay "the sum of money for which the same were sold, with interest from the time of sale at the rate provided to be paid on the mortgage debt as stated in the certificate of sale," as well as any amounts allowed under Minn. Stat. § 582.03 and § 582.031. Minn. Stat. § 580.23, subd. 1(a). The funds and necessary documents must be delivered "at the normal place of business of the recipient, on days other than Sunday, Saturday, and legal holidays, between the hours of 9:00 a.m. and 4:00 p.m." *Id.* § 580.23, subd. 1(b). Ordinarily, the property must be redeemed within six months of the foreclosure sale, *id.* § 580.23, subd. 1(a), but the period to redeem may be extended in certain circumstances, *see Twenty Associates v. First National Bank & Trust Co.*, 273 N.W. 696, 697, 700 (Minn. 1937) (by agreement of the parties). There is no requirement that the original note be produced before a mortgagor may redeem.

It is undisputed that Stein failed to comply with Minn. Stat. § 580.23 in attempting to redeem the property. An attempt "to redeem must be accompanied by a demonstrated willingness and ability to pay the amount in default." *See O'Meara v. Olson*, 414 N.W.2d 563, 567 (Minn. Ct. App. 1987). The redemption period expired on July 21, 2009, without Stein delivering the amount for which the property was sold at the foreclosure sale. The redemption period was not tolled by the filing of this action or an injunction, nor did Stein preserve his right of redemption under Minn. Stat. § 550.29 or § 580.28. Chase did nothing to prevent Stein from redeeming the property, and the parties did not agree to extend the redemption period.

Stein's challenge to the validity of the foreclosure proceedings also fails because such a challenge raised after the expiration of the redemption period is an impermissible collateral attack. *See Prior Lake State Bank v. Mahoney*, 216 N.W.2d 681, 682 (Minn. 1974); *Dixon v. Deutsche Bank Nat'l Trust Co.*, Civ. No. 06-2858, 2008 WL 4151835, at *5 (D. Minn. Sept. 3, 2008). Although Stein filed his complaint in state court before the redemption period expired, he did not effect service until well after his right to redeem terminated. Stein did not seek or obtain any relief that would have tolled the redemption period. Accordingly, Stein may not challenge the validity of the foreclosure in this proceeding.

### 3.        Breach of Contract

Stein contends that Chase committed breach of contract by not producing the original promissory note. However, Stein has not produced any agreement that obligated Chase to produce the original note on demand or otherwise. Thus, there was no breach of any contract, and Chase should be granted summary judgment on this claim.

### 4.      Theft

Minnesota Statute § 604.14 provides that "[a] person who steals personal property from another is civilly liable to the owner of the property for its value when stolen . . . ." Stein alleges that the original promissory note was his personal property, which Chase stole by not returning it to him on demand. There is no evidence to support Stein's assertions. As the holder of the note, Chase was entirely within its rights to possess it, and to retain possession of it despite Stein's demand. Furthermore, Stein's theft claim is an impermissible collateral attack on a valid foreclosure. Accordingly, the Court recommends that Chase be granted summary judgment on this claim.

### 5.      Fraud

Stein alleges that the promissory note and mortgage were obtained by fraud, fraudulent inducement, and fraudulent misrepresentation. Stein further alleges that Chase committed fraud by foreclosing the mortgage without having possession of the original note.

To succeed on any fraud-based claim, Stein must establish the following elements.

1.   There must be a representation;
2.   That representation must be false;
3.   It must have to do with a past or present fact;
4.   That fact must be material;
5.   It must be susceptible of knowledge;
6.   The representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false;
7.   The representer must intend to have the other person induced to act, or justified in acting upon it;
8.   That person must be so induced to act or so justified in acting;
9.   That person's action must be in reliance upon the representation;
10.  That person must suffer damage;
11.  That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury.

*Davis v. Re-Trac Mfg. Corp.*, 149 N.W.2d 37, 38-39 (Minn. 1967) (quotation omitted). Stein has failed to come forth with any evidence that Chase made a false representation, that Chase knew it

made a false representation, that Chase intended for him to act on a misrepresentation, that he was induced into acting, that he actually relied on a false representation, or that any damage he suffered was attributable to a misrepresentation by Chase. Accordingly, Chase should be awarded summary judgment on all of Stein's fraud-based claims.

### 6. The Truth in Lending Act

Stein alleges that Chase violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635. This section of TILA provides for a right of rescission in certain transactions. An obligor to whom credit is extended has "the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section . . . whichever is later." 15 U.S.C. § 1635(a). The creditor must clearly disclose the obligor's rights under TILA and provide the appropriate rescission forms. *Id*. When an obligor exercises his right to rescind a transaction under TILA, the creditor must return the down payment or earnest money within twenty days. *Id.* § 1635(b).

Stein asserts that Chase violated TILA by rejecting a written request for settlement, refusing to produce the original note, failing to provide a clear and conspicuous disclosure of the material terms of the loan, refusing to identify the true holder of the note, and not returning payments made on the note. Stein's first two arguments are not actionable under § 1635, because the statute neither governs proposed settlements nor requires the obligor to produce the original note. As to Stein's other claims, there is no evidence that he ever sought to rescind the loan agreement, that the required information and rescission forms were delayed or not delivered, or that Chase failed to disclose Stein's rescission rights.

Furthermore, any right of rescission that Stein may have had expired on the third business day after he purchased the property in October 2006. Although this rescission period may be

extended if the creditor fails to deliver certain information or forms, Stein has no evidence of this. Finally, even if the maximum three-year right of rescission applied, Stein's right to rescind would have expired on October 18, 2009. Chase should be granted summary judgment on Stein's TILA claims.

### 7. The Real Estate Settlement Procedures Act

Stein claims that Chase violated the Real Estate Settlement Procedures Act ("RESPA") with respect to correspondence Stein sent to Chase on March 4 and March 24, 2009. Stein mailed the March 4 letter to Tonya Manuel, Foreclosure Analyst, Chase Home Finance, LLC, 3415 Vision Drive, Columbus, OH 43219-6009. In that letter, Stein "offered" to accept Chase's "claim" on the condition that Chase produce the original note. Stein made numerous other demands, such as requiring Chase to provide copies of its corporate registration documents, bank charter, and proof of harm incurred from Stein's default. Stein threatened that Chase's failure to respond in ten days would result in litigation. Stein sent the March 24 letter to Brian H. Liebo, Chase Home Finance LLC, 4500 Park Glen Road, Suite 300, Minneapolis, MN 55416. The letter was captioned "Second Offer Letter" and made similar offers and demands.

The purpose of RESPA is to make sure that consumers receive information regarding the nature, settlement costs, and servicing of home loans. 12 U.S.C. § 2601(a). In part, RESPA governs the timing and method for a loan servicer's response to a borrower's correspondence. When a servicer receives a "qualified written request" for information concerning the servicing of a loan, it must acknowledge receipt of the correspondence in writing within twenty days. 12 U.S.C. § 2605(e)(1)(A). A "qualified written request" is written correspondence that "includes, or otherwise enables the servicer to identify, the name and account of the borrower" and "includes a statement of the reasons for the belief of the borrower, to the extent applicable,

that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* § 2605(e)(1)(B). A loan servicer may establish a separate office for receipt of qualified written requests. 24 C.F.R. § 3500.21(e)(1).

Within sixty days of receiving a qualified written request, the servicer must respond in one of three ways: (1) make appropriate corrections to the borrower's account and notify the borrower of the correction; (2) after investigating the borrower's claims, explain to the borrower in writing why the account is correct; or (3) after investigating, explain to the borrower in writing why the information requested is unavailable or unobtainable. 12 U.S.C. § 2605(e)(2). The remedy for a loan servicer's noncompliance with § 2605(e) is an award of "actual damages to the borrower as a result of the failure." *Id.* § 2605(f)(1).

Stein's RESPA claims against Chase fail for several reasons. First, neither letter is a qualified written request. Stein does not identify purported errors in his account or ask questions related to the servicing of his loan. "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). Stein's letters have nothing to do with his payments. Instead, Stein makes a series of discovery-type requests and threatens litigation if Chase does not meet his conditions within ten days. "RESPA does not require a servicer to respond to any question that a borrower may ask-no matter how broad, vague, or far afield." *DeVary v. Countrywide Home Loans, Inc.*, --- F. Supp. 2d ---, 2010 WL 1257647, at *9 (D. Minn. Mar. 25, 2010).

Second, Stein has not shown that he suffered any actual damage as a result of Chase's failure to respond. To survive summary judgment on a RESPA claim, the plaintiff must prove that he or she suffered actual damage caused by a servicer's failure to provide information. *Ricotta v. Ocwen Loan Servicing, LLC*, Civ. No. 06-1502, 2008 WL 516674, at *5-6 (D. Colo. Feb. 22, 2008). Stein did not need any of the information he requested in order to redeem the property during the six-month redemption period. Thus, any damage he sustained was not attributable to Chase.

Third, Stein mailed the letters to the wrong address. He asserts that the correct address for RESPA requests to Chase was PO Box 509011, San Diego, CA 92150-9011, which corresponds to the address included on the notice of assignment. (Stein Mem. Opp'n Mot. Summ. J. at 2; Stein Aff. Ex. CH00517.) But neither letter was mailed to this address. If a borrower does not send the qualified written request to the proper address, he cannot create a triable issue of material fact that the servicer's RESPA obligations were triggered. *See Bally v. Homeside Lending, Inc.*, No. 02C5799, 2005 WL 2250856, at *2 (N. D. Ill. Sept. 8, 2005).

**E.      Conclusion**

There are no genuine disputes as to any material facts, and Chase is entitled to judgment as a matter of law on all of Stein's claims. Accordingly, the Court recommends that Chase's motion for summary judgment be granted and Stein's motion for summary judgment against Chase be denied.

**II.      STEIN'S CLAIMS AGAINST NATIONAL**

Stein's claims against National are similar to his claims against Chase. Although Stein moved for summary judgment on his claims against National, National has not yet moved for

summary judgment against Stein.[4] Thus, the Court determines only whether, in light of the undisputed facts, Stein is entitled to judgment as a matter of law on any of his claims against National.

### A. Facts

Stein executed a mortgage in favor of National in the amount of $100,000 on January 26, 2007. (Rust Aff. Ex. C, July 26, 2010, Doc. No. 147.) He signed the mortgage and corresponding promissory note in blue ink. (Slipka Aff. ¶ 7-1,[5] Doc. No. 71.)The mortgage was recorded in Hennepin County on February 15, 2007. (Rust Aff. Exs. C, H.) After Chase foreclosed on its mortgage, National gave notice of its intention to redeem on March 5, 2009, and recorded the notice in Hennepin County on March 13, 2009. (Rust Aff. Ex. G.) Stein did not redeem the property during the statutory six-month period, and National redeemed as a junior lienholder on July 22, 2009. (Rust Aff. Ex. H.) The Sheriff's Certificate of Redemption certified that National properly filed its notice of intention to redeem, provided a copy of the mortgage executed by Stein in favor of National, and paid $555,452.69, plus the required fees. (*Id.*) National has never sought to foreclose its mortgage or enforce its note. (Rust Aff. ¶ 14.)

Stein alleges he sent a letter to National on March 27, 2009, asking for information concerning the servicing of his loan. This letter was addressed to Chase, not National, and sent to the office of Chase's attorney. (Am. Info. Sheet Ex. D at 1, Doc. No. 5.) In the letter, Stein offered to conditionally accept Chase's "claim to redeem," provided that Chase proved possession of the original note. (*Id.*) If Chase did not "timely respond," Stein threatened, it would

---

[4]     The deadline for filing dispositive motions is August 16, 2010.

[5]     This affidavit contains two paragraphs numbered 7, the first of which the Court has designated 7-1.

"be subject to legal recourse and ministerial, ratifying powers to produce the said original Note . . . in witness of a trial by judge and jury of competent jurisdiction." (*Id.*) Stein also demanded copies of National's bank charter, corporate registration documents, and similar information.

On June 16, 2009, Stein sent a letter to National at the address of its attorney. (Am. Info. Sheet Ex. E at 1, Doc. No. 5.) Stein demanded that National produce the original note, its bank charter, its corporate registration documents, and other information.

National merged into PNC Bank on November 6, 2009. (Rust Aff. Ex. J.) On March 3, 2010, National's attorney asked Stein to agree to permit National to amend its answer to reflect the merger, but Stein refused. (Rust. Aff. ¶ 17.)

### B.      Discussion

#### 1.      Holder in Due Course

Stein argues that National is not a holder in due course because it does not possess the original note. Stein claims that, without the original note, National is barred from bringing a cause of action to enforce it. However, National is not seeking to enforce the note in this action, nor did National attempt to enforce the note during the foreclosure or redemption proceedings. The only possible relevance Stein's holder-in-due-course argument has is to whether National properly redeemed its interest in the property.

To prove that National wrongly redeemed its interest, Stein must show that National violated Minn. Stat. § 580.24. Under this statute, a redeeming creditor must

> (1) record[] with each county recorder and registrar of titles where the foreclosed mortgage is recorded a notice of the creditor's intention to redeem;
>
> (2) record[] with each county recorder and registrar of titles where the notice of the creditor's intention to redeem is recorded all documents necessary to create the lien on the mortgaged premises and to evidence the creditor's ownership of the lien, including a copy of any money judgment necessary to create the lien;

and

> (3) after complying with clauses (1) and (2), deliver[] to the sheriff who conducted the foreclosure sale or the sheriff's successor in office a copy of each of the documents required to be recorded under clauses (1) and (2), with the office, date and time of filing for record stated on the first page of each document.

Minn. Stat. § 580.24(a). The creditor must also pay the amount required under § 580.23 to the holder of the sheriff's certificate of sale. *Id.* § 580.24(c).

Stein has no evidence that National failed to comply with any of these requirements. National, on the other hand, has submitted proof that it timely recorded its notice of intention to redeem, provided a copy of the mortgage to the sheriff, paid the amount required to redeem, and obtained a sheriff's certificate of redemption. Accordingly, Stein is not entitled to summary judgment on his claim that National was not a holder in due course when it redeemed.

### 2.      Validity of the Foreclosure Proceedings

To the extent any of Stein's claims are based on a purported foreclosure of the mortgage he executed with National, those claims fail for the simple reason that National did not foreclose its mortgage. Only Chase foreclosed its mortgage. The Court has already concluded that those proceedings were valid, and that Stein's challenge to the foreclosure sale is an impermissible collateral attack. Consequently, Stein is not entitled to summary judgment against National for any claim based on the alleged invalidity of the foreclosure proceedings.

### 3.      Breach of Contract

Stein contends that National committed breach of contract by not producing the original note and mortgage. But Stein has not produced evidence of any agreement requiring National to produce these original documents to Stein on demand or before redeeming its interest in the property. Thus, Stein should not be granted summary judgment on this claim.

### 4. Theft

As with Chase, Stein argues that National stole the original promissory note, which was his personal property. But Stein has not proven that the note was his personal property or that National wrongfully possessed it. Consequently, Stein is not entitled to summary judgment on his theft claim.

### 5. Fraud

Stein alleges that National acted fraudulently in failing to advise him of its merger with PNC Bank in 2008. The record demonstrates, however, that the two entities did not merge until November 6, 2009. Before that date, PNC and National were separate legal entities. The Chase foreclosure and sale and National's redemption of its interest all occurred prior to the merger. In fact, the merger occurred well after Stein filed this action. Stein's fraud claim against National therefore fails.

Moreover, Stein has not established the required elements for fraud, as they would relate to the PNC merger or to any other possible fraud-based claim against National. Stein has not shown that National made a false representation, that National knew the representation was false, that National intended for him to act on the misrepresentation, that he actually was induced into acting, that he relied on National's misrepresentation, or that any damage he suffered was attributable to a misrepresentation by National.

### 6. TILA

Stein alleges that National violated TILA, 15 U.S.C. § 1635, which provides for a right of rescission in certain transactions. However, Stein's right of rescission expired three days after the National note and mortgage were executed, and Stein has not presented any evidence that he sought to rescind the note and mortgage during that time. Stein also has not shown that National

failed to clearly disclose his right to rescind, or that the required information and rescission forms were delayed or not delivered. Accordingly, Stein should not be awarded summary judgment on his TILA claim.

### 7.    RESPA

Stein alleges that National violated RESPA by not responding to his letters dated March 27 and June 16, 2009. His RESPA claims against National fail for the same reasons as his RESPA claims against Chase. First, the letters were not qualified written requests, because Stein did not identify purported errors in his account with National or ask questions related to National's servicing of his loan. Second, Stein has not shown actual damage as a result of National's failure to respond to the letters. Third, Stein mailed the letters to the wrong addresses. Indeed, the March 27 letter was not addressed to National, was not sent to National, and did not even refer to National. The June 16 letter was sent to National's attorney, not to the address designated for RESPA requests.

### C.    Conclusion

Although there are no genuine disputes as to any material facts, Stein is not entitled to judgment as a matter of law on any of his claims against National. Accordingly, the Court recommends that Stein's motion for summary judgment against National be denied.

## III.    RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that:

1.    Defendant Chase Home Finance, LLC's Motion for Summary Judgment (Doc. No. 84) be **GRANTED**, and that all claims against Defendant Chase Home Finance, LLC be **DISMISSED WITH PREJUDICE**; and

2.    Plaintiff Kenath Stein's Motion for Summary Judgment (Doc. No. 108) be

**DENIED**.


Dated:  August 13, 2010

 _s/ Jeanne J. Graham_____
JEANNE J. GRAHAM
United States Magistrate Judge


**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **August 30, 2010**. A party may respond to the objections within ten days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the district judge is not required to review a transcript or the district judge directs otherwise.