UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

___

Kenath Richard Stein,                       Civ. No. 09-1995 (MJD/JJG)

       Plaintiff,

v.                                               REPORT AND RECOMMENDATION

National City Bank,

       Defendant.

___

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the Court on Defendant National City Bank's Motion for Summary Judgment (Doc. No. 166). Kenath Richard Stein ("Stein") is representing himself pro se. Ben I. Rust appeared for Defendant National City Bank ("National"). The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota, referred the motion to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), in an order of reference dated August 24, 2010 (Doc. No. 173). For the reasons set forth below, the Court recommends that the motion be granted and that all claims against National be dismissed with prejudice.

I.    BACKGROUND

On October 18, 2006, Stein executed a mortgage in favor of Chase Bank USA, N.A. in the amount of $484,000 to secure payment of a promissory note. (Reardon Aff. ¶¶ 4, 5 & Exs. A, B, Apr. 16, 2010, Doc. No. 81.) Stein executed a second mortgage in favor of National in the amount of $100,000 on January 26, 2007. (Rust Aff. Ex. C, July 26, 2010, Doc. No. 147.) He signed the National mortgage and corresponding promissory note in blue ink. (Slipka Aff. ¶ 7-1, Doc. No. 71.) National provided Stein with the disclosures required by the Truth in Lending Act.

(Bell Aff. ¶ 6 & Ex. D, Aug. 12, 2010, Doc. No. 169.) The mortgage was recorded in Hennepin County on February 15, 2007. (Rust Aff. Exs. C, H.)

After Stein defaulted on the Chase mortgage, Chase commenced foreclosure proceedings in November 2008. (Reardon Aff. ¶¶ 10, 11 & Ex. D; Stein Aff. Ex. CHCD3-3, Doc. No. 127.) Notice of the foreclosure sale was published in *Finance and Commerce* on December 2, 2008, and six times thereafter. (Hoffman Aff. Ex. A.) At the Sheriff's sale on January 21, 2009, Chase was the highest bidder and purchased the property for $524,558.22. (*Id.*) Chase obtained a Sheriff's Certificate of Sale executed by Richard W. Stanek, the Hennepin County Sheriff. (Stein Aff. Ex. CHCD4-12, Doc. No. 127.)

National gave notice of its intention to redeem as a junior lienholder on March 5, 2009, and recorded the notice in Hennepin County on March 13, 2009. (Rust Aff. Ex. G.) Stein did not redeem the property during the statutory six-month period, and National redeemed its interest on July 22, 2009, pursuant to Minn. Stat. § 580.24. (Rust Aff. Ex. H.) The Sheriff's Certificate of Redemption certified that National properly filed its notice of intention to redeem, provided a copy of the National mortgage, and paid $555,452.69 plus the required fees. (*Id.*) National has never sought to foreclose its mortgage or enforce the note. (Rust Aff. ¶ 14.)

Stein alleges he sent a letter to National on March 27, 2009, asking for information concerning the servicing of his loan. Actually, the letter was addressed to Chase and was mailed to the office of Chase's attorney. (Am. Info. Sheet Ex. D at 1, Doc. No. 5.) The letter contains an offer by Stein to conditionally accept Chase's "claim to redeem," provided that Chase could prove possession of the original note. (*Id.*) If Chase did not "timely respond," Stein threatened, it would "be subject to legal recourse and ministerial, ratifying powers to produce the said original Note . . . in witness of a trial by judge and jury of competent jurisdiction." (*Id.*) Stein also

demanded copies of National's bank charter, corporate registration documents, and similar information.

On June 16, 2009, Stein sent a letter to National at the address of its attorney. (Am. Info. Sheet Ex. E at 1, Doc. No. 5.) Stein demanded that National produce the original note, its bank charter, its corporate registration documents, and other information.

Stein filed a complaint against Chase and National in Hennepin County District Court on June 30, 2009. He mailed a copy of the summons and complaint to Chase and National, but his attempted service by mail was ineffective. By the time Chase and National removed the case to federal court on July 30, 2009, Stein still had not perfected service of process. Stein ultimately served Chase on March 26, 2010 and National on April 26, 2010. Meanwhile, National merged with PNC Bank on November 6, 2009. (Rust Aff. Ex. J.)

## II.     STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Chial v. Sprint/United Mgmt. Co.*, 569 F.3d 850, 853-54 (8th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)). The moving party bears the burden to show that the material facts are not in dispute. *Mems v. City of St. Paul*, 224 F.3d 735, 738 (8th Cir. 2000). The nonmoving party may not respond with mere allegations or denials but must present specific facts creating an authentic issue for trial. *Anderson*, 477 U.S. at 256. The evidence and resulting inferences are viewed in the light most favorable to the nonmoving party. *Graves v. Ark. Dep't of Fin. & Admin.*, 229 F.3d 721, 723 (8th Cir. 2000).

## III. DISCUSSION

### A. Stein's Rule 56(f) Request

In opposing National's motion for summary judgment, Stein asks for a continuance pursuant to Federal Rule of Civil Procedure 56(f). This Rule permits a party to oppose a motion for summary judgment by submitting an affidavit, showing "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(f). Stein has not identified any missing facts essential to opposing National's motion, and discovery closed on June 1, 2010. Consequently, National's motion should not be continued or denied under Rule 56(f).

### B. Validity of the Foreclosure

Stein alleges that National violated the Minnesota Uniform Commercial Code ("UCC") by foreclosing on its mortgage. This claim fails for the simple reason that National never foreclosed or even commenced foreclosure proceedings. Only Chase's mortgage was foreclosed and National was not involved whatsoever in those proceedings. Consequently, National should be awarded summary judgment on Stein's UCC claims arising from the foreclosure.

### C. Holder in Due Course Doctrine

Stein next argues that National is not a holder in due course because it does not possess the original note. Stein claims that, without the original note, National is barred from bringing a cause of action to enforce it. However, National is not seeking to enforce the note in this action, nor did National attempt to enforce the note during the foreclosure or redemption proceedings. The only possible relevance Stein's holder-in-due-course argument has is to whether National properly redeemed its interest in the property.

It is undisputed that Stein failed to comply with the requirements to redeem his property. To prove that National wrongly redeemed its interest after he failed to redeem, Stein must show that National violated Minn. Stat. § 580.24. Under this statute, a redeeming creditor must

> (1) record[] with each county recorder and registrar of titles where the foreclosed mortgage is recorded a notice of the creditor's intention to redeem;
>
> (2) record[] with each county recorder and registrar of titles where the notice of the creditor's intention to redeem is recorded all documents necessary to create the lien on the mortgaged premises and to evidence the creditor's ownership of the lien, including a copy of any money judgment necessary to create the lien;
>
> and
>
> (3) after complying with clauses (1) and (2), deliver[] to the sheriff who conducted the foreclosure sale or the sheriff's successor in office a copy of each of the documents required to be recorded under clauses (1) and (2), with the office, date and time of filing for record stated on the first page of each document.

Minn. Stat. § 580.24(a). The creditor must also pay the amount required under § 580.23 to the holder of the sheriff's certificate of sale. *Id*. § 580.24(c). There is no requirement that the creditor produce the original note.

Stein has no evidence that National failed to comply with any statutory requirements for redemption. On the other hand, National has submitted proof that it timely recorded its notice of intention to redeem, provided a copy of the mortgage to the sheriff, paid the amount required to redeem, and obtained a sheriff's certificate of redemption.

Moreover, the undisputed facts demonstrate that National held the note in due course. A holder of an instrument is a "holder in due course" when

> (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
>
> (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an

uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in section 336.3-306, and (vi) without notice that any party has a defense or claim in recoupment described in section 336.3-305(a).

Minn. Stat. § 336.3-302(a). A holder gives "value" for an instrument when the money is paid. *See Menard, Inc. v. King De Son, Co., Ltd.*, 467 N.W.2d 34, 37 (Minn. Ct. App. 1991). "An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." Minn. Stat. § 336.3-203(a). "Transfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course." *Id.* § 336.3-203(b).

Here, the note was received for value because National loaned Stein $100,000 in exchange for the note. The note did not bear any evidence of forgery, alteration, irregularity, bad faith, or any other deficiency listed in Minn. Stat. § 336.3-302(a). To the extent Stein disputes the authenticity of his signature on the note or the mortgage, his claim fails because he did not specifically deny the authenticity of his signature in his complaint, as required by Minn. Stat. § 336.3-308(a). Moreover, the record is uncontroverted that Stein personally signed the note and mortgage in blue ink.

National is entitled to summary judgment on any claim based on its status as a holder in due course or its redemption of the property.

### D. RESPA

Stein alleges that National violated the Real Estate Settlement Procedures Act ("RESPA") by not responding to the letters of March 27 and June 16, 2009. The purpose of RESPA is to make sure that consumers receive information regarding the nature, settlement costs, and servicing of home loans. *See* 12 U.S.C. § 2601(a). In part, RESPA governs the timing

and method for a loan servicer's response to a borrower's correspondence. When a servicer receives a "qualified written request" for information concerning the servicing of a loan, it must acknowledge receipt of the request within twenty days. 12 U.S.C. § 2605(e)(1)(A). A "qualified written request" is written correspondence that "includes, or otherwise enables the servicer to identify, the name and account of the borrower" and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* § 2605(e)(1)(B). A loan servicer may establish a separate office for receipt of qualified written requests. 24 C.F.R. § 3500.21(e)(1).

Within sixty days of receiving a qualified written request, the servicer must respond in one of three ways: (1) make appropriate corrections to the borrower's account and notify the borrower of the correction; (2) after investigating the borrower's claims, explain to the borrower in writing why the account is correct; or (3) after investigating, explain to the borrower in writing why the information requested is unavailable or unobtainable. 12 U.S.C. § 2605(e)(2). The remedy for a loan servicer's noncompliance with § 2605(e) is an award of "actual damages to the borrower as a result of the failure." *Id.* § 2605(f)(1)(A).

Stein's RESPA claims fail for several reasons. First, the letters were not qualified written requests. Stein did not identify purported errors in his account with National or ask questions related to National's servicing of his loan. "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). But Stein's letters had

7

nothing to do with National's receipt or application of his payments. Rather, Stein made a series of discovery-type requests and threatened litigation if National did not meet his conditions within ten days. "RESPA does not require a servicer to respond to any question that a borrower may ask-no matter how broad, vague, or far afield." *DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1106 (D. Minn. 2010). National was not required to respond to Stein's threats and requests for documents such as its corporate charger and registration documents.

Second, Stein has not shown he suffered actual damage as a result of National's failure to respond to the letters. To survive summary judgment on a RESPA claim, the plaintiff must show actual damage caused by a servicer's failure to provide information. *Ricotta v. Ocwen Loan Servicing, LLC*, Civ. No. 06-1502, 2008 WL 516674, at *5-6 (D. Colo. Feb. 22, 2008). Stein did not need any of the information he requested in order to make payments on the notes or redeem the property. Thus, any damage he sustained was not attributable to National's lack of response.

Third, Stein mailed the letters to the wrong address. The March 27 letter was not addressed to National, was not sent to National, and did not even refer to National. The June 16 letter was sent to National's attorney, not to the address designated for RESPA requests. If a borrower does not send the qualified written request to the proper address, he cannot create a triable issue of material fact that the servicer's RESPA obligations were triggered. *See Bally v. Homeside Lending, Inc.*, No. 02C5799, 2005 WL 2250856, at *2 (N. D. Ill. Sept. 8, 2005).

For all of the above reasons, National should be awarded summary judgment on Stein's RESPA claims.

**E.     TILA**

Stein alleges that National violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635, which provides for a right of rescission in certain transactions. An obligor to whom

credit is extended has "the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section . . . whichever is later." 15 U.S.C. § 1635(a). The creditor must clearly disclose the obligor's rights under TILA and provide the appropriate rescission forms. *Id.* When an obligor exercises his right to rescind a transaction under TILA, the creditor must return the down payment or earnest money within twenty days. *Id.* § 1635(b).

Stein's right of rescission expired three days after the National note and mortgage were executed, and Stein has not presented any evidence that he sought to rescind the note and mortgage during that time. Stein also has not shown that National failed to clearly disclose his right to rescind, or that the required information and rescission forms were delayed or not delivered. Consequently, National is entitled to summary judgment on the TILA claim.

### F. Fraud

To succeed on his fraud claim against National, Stein must establish the following elements.

1. There must be a representation;
2. That representation must be false;
3. It must have to do with a past or present fact;
4. That fact must be material;
5. It must be susceptible of knowledge;
6. The representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false;
7. The representer must intend to have the other person induced to act, or justified in acting upon it;
8. That person must be so induced to act or so justified in acting;
9. That person's action must be in reliance upon the representation;
10. That person must suffer damage;
11. That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury.

*Davis v. Re-Trac Mfg. Corp.*, 149 N.W.2d 37, 38-39 (Minn. 1967) (quotation omitted). Stein has failed to come forth with any evidence that National made a false representation, that National

knew it made a false representation, that National intended for him to act on a misrepresentation, that he was induced into acting, that he actually relied on a false representation, or that any damage he suffered was attributable to a misrepresentation by National. Accordingly, National should be awarded summary judgment on Stein's fraud-based claims.

G. **Theft**

Minnesota Statute § 604.14 provides that "[a] person who steals personal property from another is civilly liable to the owner of the property for its value . . . ." Stein alleges that the original promissory note was his personal property, which National stole by not returning it to him on demand. There is no evidence to support this assertion. As the holder of the note, National was entirely within its rights to retain possession of it until Stein fully performed his obligation by paying the full amount due under the note. National is entitled to summary judgment on this claim.

H. **Breach of Contract**

Stein contends that National committed breach of contract by not producing the original promissory note. But no agreement obligated National to produce the original note on demand or otherwise. Thus, there was no breach of any contract, and National should be granted summary judgment.

I. **The Merger of PNC Bank and National**

Stein accuses National of failing to advise him of its acquisition by PNC Bank in 2008. In fact, although PNC Bank acquired National's stock in 2008, the two entities did not merge until November 6, 2009. Before that date, PNC and National were separate legal entities. The Chase foreclosure sale, the expiration of the redemption period, and National's redemption of the

property all occurred prior to the merger. Thus, to the extent any of Stein's claims are founded on the merger, National is entitled to summary judgment.

## IV. RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant National City Bank's Motion for Summary Judgment (Doc. No. 166) be **GRANTED**, and all claims against Defendant National City Bank be **DISMISSED WITH PREJDUICE**; and

2. **JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: November 22, 2010

       s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

### NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **December 7, 2010**. A party may respond to the objections within ten days after service thereof. Any objections or responses shall not exceed 3,500 words. The District Judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the District Judge is not required to review a transcript or the District Judge directs otherwise.